**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **S.C.**

**No. 21-0684** (Raleigh County 19-JA-256)

**MEMORANDUM DECISION**

Petitioner Mother C.C., by counsel Timothy Lupardus, appeals the Circuit Court of Raleigh County's July 27, 2021, order terminating her parental rights to S.C.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem, Amber Hinkle ("guardian"), filed a response on behalf of the child also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in finding that petitioner violated the terms of her improvement period and terminating her parental rights when (1) the DHHR did not assist her during her improvement period, (2) there were no hearings or multidisciplinary team ("MDT") meetings held for nine months during the proceedings, and (3) testimony at the dispositional hearing demonstrated that she was treating her drug addiction.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In October of 2019, the DHHR filed a child abuse and neglect petition against petitioner after she gave birth to S.C. and admitted to abusing heroin throughout her pregnancy. The child's symptoms were indicative of withdrawal symptoms. The DHHR further alleged that petitioner had previously voluntarily relinquished her parental rights to an older child during abuse and neglect proceedings.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

The circuit court held an adjudicatory hearing in December of 2019, wherein petitioner stipulated to the allegations of abuse contained in the petition. The circuit court accepted petitioner's stipulation, adjudicated her as an abusing parent, and granted her a post-adjudicatory improvement period. The circuit court and the DHHR clearly informed petitioner that there was a "zero tolerance" policy regarding her improvement period given that she refused a bed at a drug detoxification program at the preliminary hearing and refused to submit to drug screens leading up to the adjudicatory hearing.

After continuances due to the COVID-19 pandemic, the circuit court held a mid-point review hearing in September of 2020. The circuit court noted that petitioner was doing well in her improvement period, had completed a seven-day drug detoxification program, and was attending an inpatient drug treatment program. The circuit court directed petitioner to fax documentation from her treatment facility to her assigned CPS caseworker and continued the proceedings.

In January of 2021, the circuit court held a final review hearing of petitioner's improvement period. Petitioner's counsel proffered that concerns had been raised with the prior facility petitioner had entered and that petitioner had been accused of stealing property at that facility, although the accusation was never proven. Counsel indicated that there was a "mutual parting of ways" and petitioner entered a different program. Petitioner presented the testimony of the case manager at the second treatment program. The case manager testified that petitioner entered the facility in November of 2020, completed detoxification, and was working on the first step of the treatment program. The case manager stated that petitioner signed a release of information form, but that petitioner's assigned CPS caseworker had not returned the manager's phone calls. According to the case manager, the program would last anywhere from nine to twelve months based upon petitioner's behavior and progress.

Following the case manager's testimony, petitioner's counsel requested that the circuit court grant petitioner a post-dispositional improvement period. The DHHR objected given that petitioner would be unable to complete the treatment program before the end of the post-dispositional improvement period. The circuit court held the motion in abeyance in order for the parties to review petitioner's records from the second treatment program and set the matter for disposition. The circuit court further ordered petitioner's first treatment program to release petitioner's records to the DHHR.

The circuit court held a dispositional hearing in April of 2021. Petitioner's counsel again requested a post-dispositional improvement period, noting that petitioner initially had difficulty finding an inpatient treatment program due to the COVID-19 pandemic. Counsel argued that petitioner found a second treatment program without the assistance of the DHHR and "had perfect success there" with "zero setbacks whatsoever."

The DHHR objected to petitioner's request for a post-dispositional improvement period. The DHHR argued that petitioner was granted an improvement period in November of 2019 but thereafter "just dropped off the face of the earth" for approximately five months before the pandemic occurred. Further, it argued, petitioner tested positive for drugs while at her first treatment program and was discharged from that program due to behavioral issues.

The DHHR presented the testimony of petitioner's assigned CPS worker. According to the CPS worker, petitioner was granted a post-adjudicatory improvement period in November of 2019; however, the CPS worker was unable to review a case plan with petitioner because petitioner did not maintain contact with her. The CPS worker testified that petitioner had never visited with the child who was approximately seventeen months old as of the dispositional hearing. Further, petitioner tested positive for drugs upon entry to one of the treatment programs.[2] The CPS worker believed that petitioner would complete the program by November of 2021 and acknowledged that she was doing very well. However, she recommended termination of petitioner's parental rights given the length of the proceedings and the child's need for permanency.

Petitioner testified and acknowledged that she was offered a bed at a detoxification facility following a hearing in November of 2019, and that she refused to go. Petitioner admitted that she was actively abusing drugs until she entered her detoxification program around July of 2020. Petitioner claimed that she had trouble finding a facility to accept her due to the COVID-19 pandemic. Following her detoxification program, petitioner entered her first long-term drug treatment facility but was later discharged from that program. According to petitioner, she took a bandana from a thrift store associated with the program, claiming that she had been told she could do so. The program disagreed and accused petitioner of theft. Petitioner further testified that she did not know she tested positive for drugs at one of the programs and surmised her "psych meds" might have caused her to fail the drug test. Regarding her second program, petitioner testified that the latest she would complete the program would be November of 2021. Petitioner stated that she had not made any attempts to contact her assigned CPS worker since January or February of 2021.

Petitioner's therapist testified that petitioner was working "incredibly hard" in the program and had no setbacks thus far. The therapist opined that petitioner had "a great probability of completion" of the program given her hard work thus far and the stumbling blocks she overcame during the proceedings. The therapist believed that, with support, petitioner would be able to appropriately care for her child. Petitioner's case coordinator also testified that petitioner had no setbacks in the program thus far and was progressing quickly. The coordinator stated that, if petitioner continued to progress as she had been doing, there was a possibility that she could finish the program by August of 2021. Following testimony, the circuit court held its ruling in abeyance to allow the parties time to submit proposed findings of fact and conclusions of law.

The circuit court held a final dispositional hearing in June of 2021. Petitioner's counsel argued for a post-dispositional improvement period, arguing that the COVID-19 pandemic contributed to petitioner's delay in participating in her improvement period. The DHHR and the guardian continued to oppose petitioner's request for a post-dispositional improvement period and argued in favor of terminating her parental rights. The guardian noted that the child had not seen petitioner for the entirety of the proceedings, was extremely bonded to her foster parents, and took a significant amount of time to "warm up" to strangers. Petitioner's treatment coordinator advised the circuit court that petitioner would likely complete her program in October of 2021.

---

[2]The record is conflicting as to whether petitioner tested positive for drugs upon entry to her first or second treatment program.

By order entered on July 27, 2021, the circuit court found that petitioner failed to timely enter and complete drug treatment, failed to maintain contact with the DHHR, and failed to comply with other terms of her improvement period. For example, petitioner was ordered to complete a psychological examination but twice failed to appear for her scheduled appointments. The circuit court further found that reunification was not in the child's best interest given that no bond had been established and petitioner had last seen the child only days after her birth in October of 2019. The circuit court found that the child could be harmed if she were placed in an unfamiliar setting with an unfamiliar person after so long, as illustrated by the guardian's statement that the child was extremely shy and slow to become comfortable with strangers. Accordingly, the circuit court terminated petitioner's parental rights upon finding that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination was necessary for the child's welfare. Petitioner appeals the circuit court's July 27, 2021, dispositional order.[3]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

At the outset, we dispense with petitioner's claim that the circuit court erred in finding that she violated the terms of her improvement period, because she cited to no authority or the record in support of her claim. Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure requires that "[t]he brief must contain an argument exhibiting clearly the points of . . . law presented . . . and citing the authorities relied on" and that "[t]he argument must contain appropriate and specific citations to the record on appeal." Additionally, in an Administrative Order entered December 10, 2012, Re: Filings That Do Not Comply With the Rules of Appellate Procedure, the Court specifically noted that "[b]riefs that lack citation of authority [or] fail to structure an argument applying applicable law" and "[b]riefs with arguments that do not contain a citation to legal authority to support the argument presented" are not in compliance with this Court's rules. In that order, the Court went on to instruct that "all of the requirements of the Rules must be strictly observed by litigants" because "[t]he Rules are not mere procedural niceties; they set forth a

---

[3]The father's parental rights were also terminated below. The permanency plan for the child is adoption by her foster family.

structured method to permit litigants and this Court to carefully review each case." In ordering that all litigants before this Court must comply with the Rules of Appellate Procedure, the Court cautioned that "[p]ursuant to Rule 10(j), failure to file a compliant brief 'may result in the Supreme Court refusing to consider the case, denying argument to the derelict party, dismissing the case from the docket, or imposing such other sanctions as the Court may deem appropriate.'" Because petitioner provides no authority in support of her assignment of error, we find that she is entitled to no relief.

Petitioner next presents several assignments of error pertaining to the termination of her parental rights. According to petitioner, any alleged failure on her part to complete her improvement period is entirely attributable to the DHHR. Petitioner notes that, due to the COVID-19 pandemic, no hearings or MDT meetings were held for nearly nine months of the proceedings and the DHHR provided her no assistance in meeting the terms and conditions of her improvement period. Petitioner argues that, despite the DHHR's failure to aid her in any way, she completed a detoxification program and entered an inpatient drug rehabilitation program. Petitioner claims that she presented testimony at the dispositional hearing establishing that her treatment coordinator reached out to petitioner's CPS worker on multiple occasions to no avail and that petitioner was improving in her treatment program, had had no setbacks, and was set to graduate from the program within a few months. Further, the CPS worker's testimony demonstrated the DHHR's lack of involvement in her improvement period as the CPS worker testified that she did not know the name of petitioner's rehabilitation program. Petitioner avers that the DHHR's lack of involvement and the circuit court's failure to hold any hearings for nine months violated her due process rights and those failures, coupled with her substantial progress, did not warrant the termination of her parental rights.

West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental, custodial, and guardianship rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. West Virginia Code § 49-4-604(d) provides that a circuit court may find that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when the abusing parent has "demonstrated an inadequate capacity to solve the problems of abuse or neglect on [his or her] own or with help."

The record establishes that petitioner demonstrated an inadequate capacity to solve the problems of abuse or neglect on her own or with help. Contrary to petitioner's arguments that her failure to complete her improvement period was attributable to the DHHR, petitioner bore the responsibility of initiating and completing her improvement period. *See* W. Va. Code § 49-4-610(4) ("When any improvement period is granted to a respondent pursuant to this section, the respondent shall be responsible for the initiation and completion of all terms of the improvement period."). Here, the record establishes that petitioner refused to attend a detoxification program at the beginning of the proceedings and was noncompliant with her improvement period for nearly five months. Following the grant of petitioner's improvement period in December of 2019, petitioner failed to maintain contact with the DHHR for several months prior to the start of the COVID-19 pandemic in March of 2020. Further, petitioner admittedly remained in active addiction until July of 2020. While petitioner eventually entered an inpatient treatment program, she was discharged for inappropriate behavior, leading her to enroll in a second program. As such,

5

petitioner's attempt to lay blame solely at the feet of the DHHR is without merit as petitioner's own decisions and actions caused some of the delays in her improvement period.

We acknowledge that beginning in March 2020, the COVID-19 pandemic limited the provision of services to an extent. However, that does not explain petitioner's failure to take steps to remedy her drug addiction prior to March of 2020, nor does it explain why petitioner made no effort to remain in contact with her CPS worker after January or February of 2021. Although petitioner was seemingly doing well in her second treatment program, the proceedings had been ongoing for over seventeen months as of the dispositional hearing, and petitioner was not scheduled to graduate from her program for several more months. Moreover, petitioner had not seen S.C. since the child's removal from her care, and the guardian advised the circuit court that the child was extremely bonded with her foster parents. Ultimately, the circuit court found that reunification of petitioner and the child was not warranted given petitioner's failure to timely complete her improvement period, the complete lack of a bond between petitioner and the child, and the child's best interests, and further that such evidence is sufficient to support the circuit court's termination of petitioner's parental rights.

To the extent petitioner argues she should have been granted more time to complete her improvement period, this Court has held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Based on the evidence above, we cannot find that the circuit court abused its discretion in determining that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination of her parental rights was necessary for the child's welfare. Consequently, we find no error in the circuit court's decision to terminate petitioner's rights to the child.

For the foregoing reasons, we find no error in the decision of the circuit court, and its July 27, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: March 17, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Alan D. Moats sitting by temporary assignment


**DISSENTING:**

Justice William R. Wooton


WOOTON, dissenting:


I disagree with the majority's decision to affirm this case in a memorandum decision. I would have set the matter for oral argument to better address the delay caused by the COVID-19 pandemic and its impact on petitioner mother's ability to complete her improvement period, the lack of any multidisciplinary team ("MDT") meetings scheduled to go over petitioner's case plan, and the lack of any hearings for several months.

Petitioner suffers from drug addiction which caused her to lose custody of her child. Despite the lack of any assistance from the Department of Health and Human Resources ("DHHR"), petitioner sought treatment for her addiction. Even though petitioner struggled with recovery initially, by the time of the dispositional hearing, her therapist testified that petitioner was working "incredibly hard" in the program and had had no setbacks. Her therapist believed that petitioner would be able to care for the child and it was possible that petitioner would complete the program by August of 2021. Further, despite the testimony from the Child Protective Services ("CPS") worker that petitioner had never visited with the child who was about seventeen months old at the time of the dispositional hearing, the CPS worker also acknowledged that petitioner had been requesting visits with the child for months but the worker repeatedly denied her request.

In apparent attempt to resolve this case because of the amount of time that had lapsed since the child's removal from petitioner's care, the circuit court terminated petitioner's parental's rights. There was no real consideration given by the circuit court, nor this Court, in the memorandum decision in regard to the significant issues occasioned by the delay in this case which warranted a closer examination by the Court given that a parent's right to her child has been terminated.

For the foregoing reasons, I respectfully dissent.